Beach *v.* White.

ELISHA BEACH AND CHARLES WILLIAMS *v.* JONATHAN R. WHITE, LOUISA D. WHITE AND PHINEAS WHITE.

A judgment creditor's bill cannot be sustained to reach equitable assets or choses in action, where the execution was returned before the return day.

But where the bill asks to have certain conveyances set aside as fraudulent, it may be sustained for that purpose.

The assignor of a judgment is not a necessary party to a bill filed by his assignee on the judgment, unless there is a controversy between them, which makes it necessary for the protection of the defendant; although there is no objection to making him a party.

All voluntary postnuptial settlements are not necessarily bad.   They are good when made without fraud, by a party not indebted at the time, or whose debts are trifling compared with his property.

Conveyances of real estate made after marriage for the purpose of vesting the title in the wife, the husband being at the time insolvent, were held fraudulent and void, not only against existing, but subsequent creditors.

JUDGMENT creditor's bill, to have a judgment paid out of equitable assets belonging to the debtor, and to set aside certain conveyances as fraudulent against creditors.

The bill sets forth that the complainant, Elisha Beach, November 11th, 1840, obtained a judgment against Jonathan R. White, in the Circuit Court for Oakland county, for $473.79 damages, and $40.65 costs. That, after verdict, which was rendered March 28th, 1840, and before judgment, Beach assigned the damages to the complainant, Williams, as survivor of Crocker & Williams. That, on the 28th day of November, 1840, an execution was issued to the sheriff of Lapeer county, returnable on the second Tuesday of March thereafter, which was returned unsatisfied December 16th, 1840. That the judgment was unpaid, and defendant has equitable interests, &c.

The bill further sets forth that Jonathan, on or about April 22d, 1840, for the pretended consideration of $5,000, conveyed to Phineas White certain lands therein described, which conveyance the bill charges to have been fraudulent. That, since the verdict was given, and previous to the making of said deed, said Jonathan had said he never would pay the debt, and Beach should never collect it; and, since the deed, that he had so arranged his affairs as to prevent the collection of it. That Jonathan is in possession of, and equitably owns four village lots in Lapeer, which he pretends belong to his wife, which the bill charged were once owned by him in his own name, with other property, and if the title was in her, that it had been conveyed by Jonathan to some unknown person, who had deeded it to her, that Jonathan might enjoy it, undisturbed by his creditors.

The joint and several answer of defendants submits whether complainants can rightly join in, or bring the present action, on their own showing. Denies that Jonathan

has any property, real or personal, or things in action, except such as is exempt by law, and a few articles of trifling value, which would have been given up on the execution if required; states that Louisa D. White inherited and received in her own right $1,324.05, for her own use, and of which she had control independent of her husband, which she authorised him to invest in land as he should think best for her interest. That, in the winter of 1831-2, he came to Michigan, and purchased one-fourth of the "Lapeer Mill property," so called, of Terry, Chamberlin, and Whittemore, of Pontiac, for which he paid $420 of Louisa's money. Also, he bought of the U. S. 160 acres of land, for which he paid $200, on which he made some improvements to the amount of about $175 or $180; making an expenditure of Louisa's money, up to September 26th, 1842, of nearly $800. That, on the purchase of said mill property, Terry executed a bond for a deed, to be given on certain conditions which Jonathan afterwards performed. That, in September, 1832, Phineas advanced money to Jonathan, with which he purchased the remaining three-fourths of the mill property for Phineas, and the whole of it was then conveyed to said Jonathan. That, on the 24th of October, 1832, Jonathan and Louisa conveyed all their legal interest in the lands to Phineas, who subsequently, on the 17th of November, 1832, conveyed to Louisa the 160 acre tract, and an undivided fourth part of the other lands; and that this course was adopted by advice of counsel, to vest in Louisa and Phineas their respective interests. That, when Jonathan made the conveyance to Phineas of other lands therein described, in April, 1840, he was indebted to him in a sum larger than the value of the property conveyed, and that it was made in pursuance of a prior agreement. Denies that Jonathan owns any property in Lapeer, and states that the village

lots mentioned in the bill are a part of his wife's property. States that he failed in 1828, and was indebted by reason thereof when the lands were conveyed to Phineas and Louisa in 1832, but denies that such conveyances were made to defraud creditors.

It further appeared that the money was kept in Louisa's possession, who gave parts of it to her husband to invest, at different times, and used a part herself; and that there was never any written agreement to invest it, either before or after marriage.

*M. L. Drake,* for complainants.

The principal question in this case is, whether *a voluntary conveyance, by a man who is at the time insolvent, can be impeached by subsequent creditors.*

We take it for granted that White, by receiving into his hands his wife's money, and purchasing with it land in his own name, made the property his own. *Reeve's Dom. R.* 1, 60.

White being at that time largely indebted, and having no property but this, his creditors had the undoubted right to have the lands applied in payment of their demands while the title was in him. Having this right, they could not be deprived of it by a voluntary conveyance.

Voluntary settlements are good against subsequent creditors, only when the settler is *not indebted at the time.* And positive fraud will vitiate any such settlement. *Hov. on Fraud,* 75; *Reeve Dom. Rel.* 176, 180; 8 *Wheat. R.* 229; *Fonbl. Eq.* 205; *Gilmore* v. *North America Land Co.* 1 *Pet. C. C. R.* 460; *Thompson* v. *Dougherty,* 12 *Serg. & R. R.* 448; 3 *Dessaus.* 1; 3 *J. C. R.* 500; 11 *Mass. R.* 421.

*Hunt & Watson,* contra.

THE CHANCELLOR.   The bill cannot be sustained as to the equitable assets, or *choses in action*, belonging to J. R. White, the judgment debtor;—the execution having been returned before the return day.   *Smith* v. *Thompson, ante* 1.   But it may be sustained as to the conveyances charged to be fraudulent against his creditors.   For this purpose, it is only necessary to show an execution has been issued. *Williams* v. *Hubbard, ante* 28.

Beach, the assignor of the judgment, is not a necessary party.   Had he not united with his assignee in filing the bill, or otherwise been made a party, the bill, on that account, would not have been demurrable.   *Morey* v. *Forsyth, ante* 465.   The assignor of a judgment was formerly considered a necessary party to a bill filed by his assignee; *Cathcart* v. *Lewis*, 1 *Ves. R.* 463; and will still be so considered by the Court, where there is a controversy between the assignor and assignee relative to the assignment, making it necessary for him to be a party for the protection of defendant.   *Id.*   While, therefore, the assignor is not, in all cases, a necessary party, no objection can be taken to his being made a party.

The conveyance of the 160 acre lot, and a quarter of the mill property, on October 24th, 1832, by J. R. White and his wife, to P. White, and the reconveyance thereof to the wife of J. R. White, on the seventh of November following, were intended to answer all the purposes of a settlement of the property on the wife.   As a settlement, it was fraudulent and void against creditors; because it was after marriage, not in pursuance of any antenuptial contract, without consideration, and at a time when J. R. White was indebted to a much larger amount than he was able to pay.   The money with which the land was purchased belonged to Louisa D. previous to her marriage; but, on the happening of that event, it became the proper-

ty of her husband by virtue of his marital rights, no settlement, or agreement for a settlement of it, on her, having been made before the marriage. She says there was no agreement in writing, or contract between her and her husband, relative to the control or use of the money, previous to the marriage, or subsequent. All postnuptial voluntary settlements are not necessarily void as to creditors. They are good, when made without any fraudulent intent, and by a person not indebted at the time, or, if indebted, whose debts are so small in amount, when taken in connection with the means still retained by him to pay them, as to repel all presumption of fraud on their account.

The debt to Beach accrued long after the conveyances; but they are, nevertheless, fraudulent and void as to him and his assignee. Where a settlement is fraudulent against existing creditors, it is also as to subsequent creditors. *Richardson* v. *Smallwood, Jac. R.* 552. The justice of this rule is clearly exemplified in the present case. After Beach had obtained a verdict, but before judgment, J. R. White conveyed all his property to P. White, in payment of a debt of $5,000. This conveyance, being made in payment of a *bona fide* debt, and no suspicious circumstances attaching to it, is good against the grantor's creditors. But more than one half of this debt was for money paid by P. White, for his brother, to different individuals to whom J. R. White was indebted prior to the year 1832. So that, had this part of the debt to P. White been paid out of the property conveyed to Louisa D., something would have been left to pay the Beach judgment.

A decree must be entered declaring the deed of October 24th, 1832, from J. R. White and wife to P. White,—so far as it relates to the 160 acre lot, and the undivided quarter of the mill property,—and the deed of the seventh November

following, from P. White to Louisa D., fraudulent and void against the judgment mentioned in the pleadings, and against the complainants, and all other persons who may hereafter claim title to the premises through or under the judgment; and complainants are to be at liberty to sue out a new execution at law, and to sell so much of the property as is necessary to pay the judgment, and to recover their taxable costs in the suit against J. R. White. The bill to be dismissed, without costs, as to the defendant P. White.